**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Raymond P. Moore**

Civil Action No. 14-cv-01964-RM

SUSAN A. PROSSER,

    Plaintiff,

v.

CAROLYN W. COLVIN, Acting Commissioner of Social Security,

    Defendant.

---

# ORDER

---

This matter is before the Court on Plaintiff Susan A. Prosser's ("Plaintiff") request for judicial review pursuant to 42 U.S.C. § 405(g). (ECF No. 1.) Plaintiff challenges the final decision of Defendant Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, by which she denied Plaintiff's applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") respectively under Titles II and XVI of the Social Security Act ("Act"). The Administrative Law Judge ("ALJ) ruled Plaintiff was not disabled within the meaning of the Act and therefore not entitled to DIB or SSI.

Defendant provided the Court with the administrative record[1]. (ECF Nos. 9; 9-1; 9-2; 9-3; 9-4; 9-5; 9-6; 9-7; 9-8; 9-9.) The parties have fully briefed the matter and it is ripe for adjudication. (ECF Nos. 13; 14; 15.)

---

[1] The parties dispute whether the administrative record is complete. This aspect of the parties' dispute is not material to the Court's Order and thus, the Court declines to decide the issue.

For the reasons set forth below, the Court vacates Defendant's denial of Plaintiff's DIB and SSI applications and remands for further proceedings consistent with this Order.

## I. BACKGROUND

Plaintiff applied for DIB and SSI in January 2012, alleging she was disabled as of June 2, 2011, due to the following conditions that limit her ability to work: hearing problems, fibromyalgia, and a mental illness. (Admin. R. ("Tr.") 167-77, 194.) After Plaintiff's applications were initially denied, Plaintiff requested a hearing before an ALJ. (Tr. 118-23.) The ALJ denied Plaintiff's applications. (Tr. 9-22.) Plaintiff requested review of the ALJ's decision and, in May 2014, the Appeals Council denied such review. (Tr. 1-4.) Plaintiff timely requested judicial review before the Court.

### A. Background and Relevant Medical Evidence

Plaintiff was born in 1955. (Tr. 167.) Plaintiff has a high school education. (Tr. 194.) Plaintiff's past relevant work history includes grocery cashier; deli worker; laundry worker; animal care taker; courtesy clerk; stocker; and general clerk. (Tr. 202-22.)

Plaintiff claims she became disabled on June 2, 2011 due to a combination of physical and mental health impairments. (Tr. 102.) Plaintiff has an extensive medical history.

Plaintiff has a history of hearing loss which dates back to the 1980s and wore hearing aids, with which she had excellent speech discrimination. (Tr. 256, 335, 522.)

In July 2011, Plaintiff suffered fractured ribs, a broken leg, and a lacerated spleen. (Tr. 435-70, 595-600, *see* 331.)

From September to December 2011, Plaintiff was incarcerated. (*See* Tr. 583-610.)

In January 2012, Plaintiff was diagnosed with a broken collarbone (clavicle). (Tr. 429-30.) Plaintiff received medical treatment from Michael Welch, D.O., at Peak Vista Community Health Center because of continued shoulder pain. (Tr. 318-21.) Plaintiff saw Dr. Welch two additional times in January due to continued musculoskeletal pain. (Tr. 302, 313.) Also in January 2012, Gregory Morris ("Morris"), a physician assistant with Peak Vista, examined Plaintiff because she was applying for Colorado State Aid to the Needy and Disabled ("AND") (Tr. 308-09). Plaintiff also began receiving therapy from Lindsey Carnick ("Carnick"), a licensed social worker ("LCSW") at Peak Vista for depression and substance abuse. (Tr. 299, 306-07, 311, 316-17.) In February 2012, Morris performed an AND physical. (Tr. 296-97.) Morris completed a MED-9[2] in which he opined that Plaintiff was disabled due to hearing loss, equilibrium, alcoholism, fibromyalgia, chronic pain, anxiety, and depression. (Tr. 333.) In March 2012, Morris continued to treat Plaintiff for hypertension (Tr. 286-88, 639-41), elevated liver enzymes (Tr. 279), and portal vein thrombosis (Tr. 642). Carnick continued to provide Plaintiff with psychological therapy during which Plaintiff reported difficulty sleeping because she was ruminating about upsetting topics. (Tr. 284, 355.)

In March 2012, Hannah Evans, Ph.D., a psychologist, examined Plaintiff as part of Plaintiff's disability application. (Tr. 485-89.) Dr. Evans noted that Plaintiff complained of problems with depression beginning early in life. (Tr. 485.) Plaintiff told Dr. Evans that her daily activities included watching television, walking, going to the library, and volunteering. (Tr. 486.) On examination, Dr. Evans noted Plaintiff reported having problems being around

---

[2] The Med-9 form is part of the application for benefits under AND. The Tenth Circuit has refused to find categorically that Med-9 forms are entitled to no weight, especially where they have been completed by a treating source. *Medina v. Astrue*, 847 F. Supp. 2d 1314, 1320 n.5 (D. Colo. 2012).

groups of people. (Tr. 487.) Dr. Evans noted Plaintiff had problems with concentration but had a good fund of information and intact abstract thinking, judgment, and reasoning. (Tr. 488). Dr. Evans diagnosed Plaintiff with dysthymic disorder and opined that Plaintiff had mild limitations in understanding and memory but moderate limitations in concentration. (Tr. 488.) Also in March 2012, Thurman Hodge, D.O., examined Plaintiff as part of her disability application. (Tr. 492-98.) Plaintiff reported hearing loss and "some equilibrium problems" since a 1984 ear surgery as well as pain in various parts of her body. (Tr. 492.) Dr. Hodge observed no abnormalities with Plaintiff's spine, lower extremities, or upper extremities (except Plaintiff had a reduced range of motion in her shoulder). (Tr. 495-96.) Dr. Hodge noted Plaintiff had intact coordination and gait except that she had poor balance when walking only on her heels. (Tr. 496.) Dr. Hodge diagnosed that Plaintiff had left shoulder pain with reduced range of motion, right shoulder decreased range of motion, hearing loss, and mildly poor balance. (Tr. 496-97.) Dr. Hodge did not diagnose Plaintiff with fibromyalgia. (*See generally* Tr. 496-97.) Dr. Hodge opined that Plaintiff could sit, stand, and walk without restriction; lift 20 pounds and carry 10 pounds; but could only abduct her arms fewer than 90 degrees (*i.e.*, could not reach above her shoulder). (Tr. 497.)

Following these examinations, Defendant's physicians reviewed the record. (Tr. 499-500, 89-100.) Ellen Ryan, M.D., a psychiatrist, opined that Plaintiff's mental impairments were not severe, *i.e.*, that they did not significantly limit her ability to perform basic work activities. (Tr. 93.) James McElhinney, M.D., opined that Plaintiff had physical abilities consistent with more than the full range of light work, except that Plaintiff was limited in her ability to reach overhead. (Tr. 95-98.)

In April 2012, Plaintiff returned to Peak Vista for bronchitis, hypertension, elevated liver enzymes, and portal vein thrombosis, which was resolved by the end of April. (Tr. 630-35.) Plaintiff also began receiving counseling at Aspen Pointe as part of a jail diversion program. (Tr. 503.)

In July 2012, Morris evaluated Plaintiff. (Tr. 636.) In August 2012, Plaintiff returned to Aspen Pointe to report that she had a relapse in drinking. (Tr. 547.) Plaintiff had limited treatment at Aspen Pointe between September 2012 and February 2013. (Tr. 530-43, 574-76.)

In January 2013, Plaintiff presented to the Memorial Hospital Emergency Room twice. (Tr. 678, 682.) Also in January 2013, Plaintiff had a physical therapy evaluation to treat balance problems. (Tr. 663.) The physical therapist reported that "vestibular testing" showed "[c]entral and peripheral ocular motor function deficits." (Tr. 664-65.) The physical therapist indicated Plaintiff had a good prognosis with treatment (Tr. 665) but Plaintiff did not continue with follow up therapy sessions (Tr. 666).

In February 2013, Melissa Haberzult ("Haberzult"), a physical therapist, completed a physical residual functional capacity questionnaire. (Tr. 523-27.) Haberzult reported that Plaintiff's impairments were not reasonably consistent with the symptoms and functional limitations described in the evaluation. (Tr. 524.) Haberzult opined that Plaintiff could sit one to two hours at a time and stand up to 20 minutes at a time. (Tr. 524.) Haberzult further opined that Plaintiff could stand or walk fewer than two hours and sit four hours in a four-hour work day and occasionally lift 10 pounds and frequently lift fewer than 10 pounds. (Tr. 526.)

Plaintiff testified that she quit her last job working as a grocery store cashier in June 2011 because she was going to jail for a DUI. (Tr. 51-52.)

### B.     The ALJ's Decision

On May 15, 2013, ALJ Debra Boudreau issued her decision in this matter denying Plaintiff DIB and SSI. (Tr. 9-22.) In reaching her decision, ALJ Boudreau followed the five-step sequential evaluation process for evaluating disability claims. (Tr. 12-22.) ALJ Boudreau found that Plaintiff has met the disability insured status of the Act and has not engaged in substantial gainful activity on and after June 2, 2011, the alleged onset date. (Tr. 14.) ALJ Boudreau found that Plaintiff has the following severe impairments: fibromyalgia and a bilateral hearing loss. (Tr. 14-16.) ALJ Boudreau found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in Appendix 1 of the Social Security Regulations. (Tr. 16-17.) ALJ Boudreau found Plaintiff's residual functional capacity ("RFC") to be as follows:

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lift and carry 25 occasionally and 20 pounds frequently, stand and/or walk for about 6 hours total in an 8-hour workday, sit for about 6 hours total in an 8-hour workday, occasionally climb ladders, must avoid concentrated exposure to loud noise such as in a factor with loud machinery noise, and must avoid concentrated exposure to vibration, unprotected heights, and hazardous machinery.

(Tr. 17.) ALJ Boudreau found that Plaintiff has past relevant work and that she is able to perform such work. (Tr. 21.) These jobs include grocery cashier and general clerk. (Tr. 21.)

Based on the vocational expert's testimony, which in turn was predicated on ALJ Boudreau's hypothetical and in consideration of Plaintiff's age and education, ALJ Boudreau found that Plaintiff could perform, in part, her past relevant work. (Tr. 21.)

Therefore, ALJ Boudreau concluded that Plaintiff was not disabled. (Tr. 22.)

C.     **Procedural History**

Plaintiff appealed the ALJ's decision at issue in this matter. (Tr. 8.) On May 16, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1-4.) Plaintiff appeals that decision by bringing this lawsuit. (ECF No. 1.)

II.    **LEGAL STANDARDS**[3]

A.    **Standard of Review**

The Court reviews the Commissioner's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. *Id*. "It requires more than a scintilla, but less than preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

Although a district court will "not reweigh the evidence or retry the case," it "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007); *see also* 42 U.S.C. § 405(g). Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261-62 (10th Cir. 2005). In reviewing the Commissioner's decision, the Court may not substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). As the Tenth Circuit Court of Appeals observed in *Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476 (10th Cir. 1993), the ALJ also has a basic duty of inquiry to "fully and fairly

---

[3] Many C.F.R. citations are to part 404—which addresses DIB claims. All cited regulations have parallel citations in part 416—which addresses SSI claims.

develop the record as to material issues." *Id.* at 479-480 (citations omitted). This duty exists even when the claimant is represented by counsel. *Id.* at 480 (citation omitted).

Also, "[t]he failure to apply the correct legal standard or to provide [a reviewing] court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (citation and internal quotation marks omitted); *see also Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996) ("[T]he Secretary's failure to apply the correct legal standards, or to show us that [he] has done so, are . . . grounds for reversal.").

### B. Evaluation of Disability

The criteria to obtain DIB under Title II of the Act are that a claimant meets the insured status requirements, is younger than 65 years of age, files an application for a period of disability, and is under a "disability" as defined under Title II of the Act. 42 U.S.C. §§ 416(i), 423(a); *Flint v. Sullivan*, 951 F.2d 264, 267 (10th Cir. 1991). In addition, the individual's disability must have begun before his or her disability-insured status has expired. 20 C.F.R. § 404.101; Social Security Ruling ("SSR") 83-10, 1983 WL 31251, at *8 (1983).

The criteria for SSI payments under Title XVI of the Act are determined on the basis of the individual's income, resources, and other relevant characteristics. 42 U.S.C. § 1382(c)(1). In addition to being financially eligible, the individual must file an application for SSI and be under a disability as defined in the Act. 42 U.S.C. § 1382.

The Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment [that] can be expected to result in death or [that] has lasted or can be expected to last for a continuous period of not

[fewer] than twelve months." 42 U.S.C. § 1382c(a)(3)(A) (definition for benefits under SSI); *see also* 42 U.S.C. § 423(d)(2)(A) (definition for benefits under DIB); *Barnhart v. Walton*, 535 U.S. 212, 214-15 (2002).

There is a five-step sequent for evaluating a disability. *See* 20 C.F.R. §§ 404.1520, 416.920(a)(4); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987) (describing five-step analysis). If it is determined that a claimant is or is not disabled at any point in the analysis, the analysis ends. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991). First, the claimant must demonstrate that he or she is not currently involved in any substantial, gainful activity. 20 C.F.R. §§ 404.1520(b), 416.920(a)(4)(i). Second, the claimant must show a medically severe impairment or combination of impairments that significantly limits his or her physical or mental ability to do basic work activities. *Id*. at §§ 404.1520(c), 416.920(a)(4)(ii). Third, if the impairment matches or is equivalent to an established listing under the governing regulations, the claimant is judged conclusively disabled. *Id*. at §§ 404.1520(d), 416.920(a)(4)(iii). If the claimant's impairment does not match or is not equivalent to an established listing, the analysis proceeds to the fourth step. Fourth, the claimant must show that the "impairment prevents [him or her] from performing work [he or she] has performed in the past." *Williams v. Bowen*, 844 F.2d 748, 751 (10th Cir. 1988) (citations omitted); *accord* 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv). If the claimant is able to perform his or her previous work, he or she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(a)(4)(iv). Fifth, the Commissioner must demonstrate: (1) that based on the claimant's residual functional capacity ("RFC"), age, education, and work experience, the claimant can perform other work; and (2) the work that the claimant can perform is available in significant numbers in the national economy.

*Frey v. Bowen*, 816 F.2d 508, 512 (10th Cir. 1987); *see also* 20 C.F.R. §§ 404.1520(g), 416.920(a)(4)(v).

### III. ANALYSIS

Plaintiff raises numerous issues for the Court's consideration, including that: (1) at Step Two, the ALJ failed to evaluate all of Plaintiff's severe impairments (ECF No. 13 at 10-19); (2) at Step Three, the ALJ failed to properly evaluate whether Plaintiff's impairments met or equal a listing impairment (ECF No. 13 at 19-21); and (3) at Step Four, the ALJ erred because she did not evaluate Plaintiff's mental impairments in connection with formulating the RFC determination and thus, the ALJ's holding that Plaintiff could perform her past work is in error (ECF No. 13 at 22-38).

Because the Court finds that the ALJ committed legal error due to the absence of an adequate RFC explanation in connection with Plaintiff's mental impairments and the failure to explain the weight given to certain medical opinions, the Court VACATES Defendant's decision.

Because this error alone requires remand, the Court does not address the other arguments raised by Plaintiff. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006) (when the ALJ's error affected the analysis as a whole, the court declined to address other issues raised on appeal); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003) ("We will not reach the remaining issues raised by appellant because they may be affected by the ALJ's treatment of this case on remand."). The Court expresses no opinion as to Plaintiff's other arguments and neither party should take the Court's silence as tacit approval or disapproval of how the evidence was considered. The Court does not intend by the opinion to suggest the result that should be reached

on remand; rather, the Court encourages the parties as well as the ALJ to consider all of the evidence and the issues anew.

> A. **The ALJ Committed Reversible Error By Failing to Provide Proper Explanation with Respect to Plaintiff's RFC as it Pertains to Plaintiff's Mild Mental Impairments and by Failing to State the Weight the ALJ Afforded to Certain Medical Opinions**

The special technique for evaluating a disability claim that involves mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The degree of functional limitation resulting from an impairment is identified by considering "all relevant and available clinical signs and laboratory findings, effects of [the] symptoms, how the functioning may be affected by factors including, but not limited to, chronic mental disorders, structural settings, medication, and other treatment." 20 C.F.R. § 404.1520a(c). After the ALJ assesses the degree of functional limitations in the areas of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation, the severity of the claimant's mental impairment will be determined. 20 C.F.R. § 404.1520a(d). To complete this step, the ALJ uses a five-point scale, rating the degree of limitation in the first three areas as either none, mild, moderate, marked, or extreme; and the limitation in the fourth area using a numerical scale of either none, one or two, three, or four or more. *Wells v. Colvin*, 727 F.3d 1061, 1068 (10th Cir. 2013) (citing 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4)). The ALJ's degree-of-limitation ratings then inform his conclusions at steps two and three of the five-step analysis. *Id*. (citing 20 C.F.R. §§ 404.1520a(d); 416.920a(d)). The claimant's mental limitations "must be expressed in terms of work-related functions," such as understanding instructions, using judgment to make work-related decisions, and interacting appropriately with the public or co-workers. Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *6 (July 2, 1996). The ALJ's "written decision

must incorporate [his] pertinent findings and conclusions." 20 C.F.R. § 404.1520a(e)(4).

In this matter, the ALJ found Plaintiff's mental impairments were not severe because Plaintiff's mental impairments caused "no more than mild restrictions in [the activities of daily living, mild difficulties maintaining social functioning, mild difficulties maintaining concentration, persistence and pace,] and 'no' episodes of decompensation. . . ." (Tr. 15.)

"[A]n ALJ is required to consider all of the claimant's medically determinable impairments, singly and in combination; the statute and regulations require nothing less" and a failure to do so "is reversible error." *Salazar*, 468 F.3d at 621 (citations omitted); *accord* 42 U.S.C. § 423(d)(2)(B); *accord* 20 C.F.R. § 404.1523.  At Steps 4 and 5, the ALJ "must consider the combined effect of all of the claimant's medically determinable impairments, *whether severe or not severe*." *Wells*, 727 F.3d at 1065 (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)) (emphasis in original).  "[T]he Commissioner's procedures do not permit the ALJ to simply rely on his finding of non-severity as a substitute for a proper RFC analysis." *Wells*, 727 F.3d at 1065 (citing SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996)).  "[T]he ALJ's 'RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence.'" *Wells*, 727 F.3d at 1065 (citing 1996 WL 374184 at *7).  When determining the RFC, the ALJ must consider all medically determinable impairments, physical and mental, even those that are not considered "severe." 20 C.F.R. § 404.1545(a)(2), (b), (c).  Mental limitations must be part of the RFC assessment, because "[a] limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting may reduce [a claimant's] ability to do past

work and other work." *Id*. § 404.1545(c).

Similar to the claimant in *Wells*, in this matter, the ALJ found that Plaintiff's alleged mental impairments were medically determinable but non-severe. (Tr. 14-16.) The ALJ then, however, did not discuss any mental impairments in her RFC analysis. (*See generally* Tr. 17-21) Defendant argues that the ALJ "explicitly stated that she considered all [of] Plaintiff's impairments, severe and non-severe in assessing [Plaintiff's] residual functional capacity: 'While the undersigned has determined that the claimant's above discussed impairments are 'non-severe' . . . the undersigned emphasizes that she has considered the combined effects of all the claimant's impairments, both 'severe' and 'non-severe' impairments, in determining the claimant's residual functional capacity.'" (ECF No. 14 at 15 (citing Tr. 16).) The Court does not find persuasive Defendant's argument that the ALJ considered Plaintiff's medically determinable mental impairments in reaching her RFC finding. Further, the ALJ states that:

> [i]n making this [RFC] finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. 404.1529 and 416.929 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 C.F.R.404.1527 and 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

(Tr. 17.) Other than for these conclusory assertions, the ALJ's RFC assessment includes no discussion of Plaintiff's mental impairments. (*See generally* Tr. 17-21.) The decision contains no further evaluation of Plaintiff's functional limitations in relation to her mental impairments. This constitutes reversible error. *See Grotendorst v.Astrue*, 370 F. App'x 879, 884 (10th Cir. 2010) (unpublished) (holding that "once the ALJ decided . . . that [the claimant's] mental impairments were not severe, [and that] she gave those impairments no further consideration" constitutes reversible error). To the extent the ALJ relied on her finding of non-severity as a

13

substitute for an adequate RFC analysis, the Commissioner's regulations demand a more thorough analysis. *Wells*, 727 F.3 at 1071 (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).

The Court recognizes that "[an ALJ's failure to conduct a . . . particularized assessment of mental functions at step four [is] harmless error [when there] is no substantial evidence that would allow a reasonable administrative factfinder to include any mental limitations in [the] RFC." *Alvey v. Colvin*, 536 F. App'x 792, 795 (10th Cir. 2013) (unpublished). Defendant does not argue that there is no substantial evidence in the record that would allow a reasonable factfinder to find a mental impairment that limited Plaintiff's ability to work. (*See generally* ECF No. 14.) Defendant does not make this argument for good reason. The ALJ found that Plaintiff's mental limitations "cause no more than 'mild' limitation in any of the . . . three functional areas [*i.e.*, daily living; maintaining social functioning; and in maintaining concentration, persistence, or pace,] and 'no' episodes of decompensation which have been of extended duration. . . ." (Tr. 15.)

The Social Security Administration has stated that where the claimant has the ability to understand, carry out, and remember simple instructions; respond appropriately to supervision, coworkers, and usual work situations; and deal with changes in a routine work setting, then an RFC of "unskilled" work would be appropriate. *See* 20 C.F.R. § 404.1545(c); SSR 85-15, 1985 WL 56857, *4 (Jan. 1, 1985). The Tenth Circuit has noted that there is a distinction between skill level and mental functions. *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2014) (unpublished); *see also* SSR 00-4p, 2000 WL 1898704, *3 (Dec. 4, 2000) ("A skill is knowledge of a work activity that requires the exercise of significant judgment that goes beyond the carrying out of simple job duties and is acquired through performance of an occupation that is above the

unskilled level (requires more than 30 days to learn)."). In *Jaramillo*, the Tenth Circuit noted that none of the basic mental abilities of unskilled work described in SSR 85-15, 1985 WL 56857, capture any of the three *moderate* limitations as found by the medical consultative examiner in that case. 576 F. App'x at 876. According to the Social Security Administration's Program Operations Manual System ("POMS"), moderately limited means "the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." *Jaramillo*, 576 F. App'x at 875 (citing POMS DI 24510.063 B.2). A moderate limitation "must be related with sufficient precision in a dispositive hypothetical to a [vocational expert] *and* in an RFC finding." *Jaramillo*, 576 F. App'x at 876 (emphasis added).

The Court notes that the ALJ found that "in consideration of the record as a whole, . . . the claimant's medically determinable mental impairments, considered singly and in combination, do not cause more than *minimal* limitation in the claimant's ability to perform basic mental work activities. . . ." (Tr. 15 (emphasis added).) The ALJ, however, did not limit Plaintiff to the performance of "unskilled" work. (*See generally* Tr. 17-21.)

Further, evidence before the ALJ indicates that Plaintiff did have some work-related mental impairments. Specifically, Dr. Evans found Plaintiff's "ability to concentrate is moderately limited." (Tr. 488, 14.) Dr. Ryan, in contrast, found Plaintiff's ability to concentrate only to be mildly impaired. (Tr. 93, 110, 15.) The ALJ must state the weight she gave to each of the medical opinions. 20 C.F.R. §§ 404.1527(b), (c), 416.927(b), (c); *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003) (citation omitted); *see* SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996) (providing that an ALJ must explain why an opinion was not adopted). The ALJ did not state the weight she gave to either of the opinions by Dr. Evans or Dr. Ryan. (*See*

*generally* Tr. 12-22.) Because the Court is unable to discern how much weight the ALJ assigned to Drs. Evans and Ryan's respective opinions, this error is not harmless. *Cf. Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1163 (10th Cir. 2012) (holding that the ALJ's failure to assign a specific weight to a consulting examiner's opinion was harmless where the opinion was generally consistent with the ALJ's residual functional capacity). The ALJ may not adopt one medical source opinion by default simply because she discredits or rejects another. *Gonzales v. Colvin*, 69 F. Supp. 3d 1163, 1169-70 n. 6 (D. Colo. 2014) (citation omitted).

Despite Defendant's argument that the "ALJ found no mental limitations," (ECF No. 14 at 17), the substantial evidence indicates the presence of at least mild mental impairments (as the ALJ found) (Tr. 14-15, 93, 110, 488). The ALJ was required to include these mild mental impairments in her RFC discussion and in the hypothetical posed to the vocational expert. *See Wells*, 727 F.3d at 1065 n. 3 ("An ALJ could, of course, find at step two that a medically determinable impairment posed *no* restriction on the claimant's work activities. Such a finding would obviate the need for further analysis at step four. That is not the case here, however; the ALJ did find 'mild' restrictions in three of the relevant functional areas, requiring further analysis.") (emphasis in original; internal citations omitted); *see also Garcia v. Colvin*, Case No. 13-cv-01353-RBJ, 2014 WL 3953139, *9 (D. Colo. Aug. 13, 2014).

**IV.     CONCLUSION**

Based on the foregoing, the Court:

(1)     VACATES Defendant's denial of disability insurance benefits and supplemental security income; and

(2)     REMANDS to Defendant for further proceedings as directed in this Order pursuant to sentence four in 42 U.S.C. § 405(g).

DATED this 14th day of October, 2015.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge
